IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LIFE360, INC. AND TILE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>GOCODES, INC.,<br><br>Defendant. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs Life360, Inc. ("Life360") and Tile, Inc. ("Tile"), together "Plaintiffs", by and through their undersigned counsel, hereby aver and allege the following in support of their Complaint against Defendant GoCodes, Inc. ("GoCodes"):

**NATURE OF THE ACTION**

1. This is an action for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*. of invalidity of United States Patent No. 8,973,813 ("the '813 Patent"). A copy of the '813 Patent is attached as Exhibit A hereto.

2. On June 3, 2025, GoCodes filed a patent infringement suit alleging that Life360, Tile, and their customers infringe the '813 Patent. *GoCodes, Inc. v. Life360, Inc. and Tile, Inc.*, Case 1:25-cv-00685-CFC (D. Del.). On July 23, 2025, before Life360 or Tile had filed a response to the complaint, GoCodes voluntarily dismissed the complaint under FRCP 41(a)(1)(A)(i) without prejudice. Despite voluntarily dismissing its complaint, GoCodes has not provided Plaintiffs with a covenant not to sue, nor has it withdrawn its allegations of

infringement against Life360, Tile, and their customers. Plaintiffs therefore file this action for declaratory judgment of invalidity of the '813 Patent.

## THE PARTIES

3. Life360 is a Delaware corporation having a principal place of business at 1900 S. Norfolk Street, Suite 310, San Mateo, CA 94403.

4. Tile is a Delaware corporation having a principal place of business at 1900 S. Norfolk Street, Suite 310, San Mateo, CA 94403. Tile is a wholly owned subsidiary of Life360.

5. Upon information and belief, GoCodes is a Minnesota corporation with its principal place of business at 7900 International Drive, Suite 300, Bloomington, MN.

6. Upon information and belief, GoCodes owns the '813 Patent, including all rights to enforce and license the '813 Patent.

## JURISDICTION AND VENUE

7. This action arises under the Patent Laws of the United States of America, 35 U.S.C. § 1 et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has subject matter jurisdiction over the action under 28 U.S.C. § 1331 and § 1338, based on the existence of an actual controversy between Life360 and Tile, on the one hand, and GoCodes, on the other hand, for claims under the Patent Laws. In particular, there is an active case or controversy between the parties concerning the infringement and validity of the '813 Patent.

8. The existence of this controversy is demonstrated by the complaint filed by GoCodes against Life360 and Tile in this Court on June 3, 2025 alleging the infringement of the '813 Patent. *GoCodes, Inc. v. Life360, Inc. and Tile, Inc.*, Case 1:25-cv-00685-CFC (D. Del.). A copy of the complaint is attached as Exhibit B hereto. In that complaint, GoCodes asserts that

Life360 and Tile have and continue to infringe the '813 Patent, that Life360's and Tile's customers infringe the '813 Patents, and that such infringement is willful.

9. In paragraph 16 of its complaint against Life360 and Tile, GoCodes asserts that:

> Since at least the time that Defendants received actual or constructive notice of infringement, Defendants have and continue to infringe, with specific intent or willful blindness, at least claims 19–20 and 22–26 of the '813 Patent by making, using, selling, and/or offering for sale the Infringing Devices in the United States, including in this judicial district, and importing into the United States the Infringing Devices that are sold in this judicial district.

10. In paragraph 37 of its complaint against Life360 and Tile, GoCodes asserts that:

> Defendants have induced and continue to induce infringement. Defendants have actively encouraged or instructed others (e.g., their customers), and continue to do so, on how to use their products and services (see, e.g., Introducing Lost and Found Labels, https://www.life360.com/tile-trackers/how-tile-labels-work (last visited June 3, 2025)) and related products and services such as to cause infringement of one or more of claims of the '813 Patent, literally or under the doctrine of equivalents.

11. In paragraph 38 of its complaint against Life360 and Tile, GoCodes asserts that:

> Defendants have known of the '813 Patent and the technology underlying it from at least July 1, 2024, when Mr. Jeffer Ali (Counsel for Plaintiff) sent a notice letter to Mr. Chris Hulls (CEO for Defendant Life360), including infringement claim charts, notifying Defendants' [sic] of ongoing infringement of the '813 Patent through at least the Infringing Devices. Defendants' infringement of the '813 Patent has thus been knowing and willful.

12. In its Prayer for Relief in its complaint against Life360 and Tile, GoCodes requests injunctive relief, damages, enhanced damages, and attorney fees.

13. On July 23, 2025, GoCodes filed a notice of voluntary dismissal of its complaint without prejudice. This Court closed the case on July 23, 2025.

14. Despite voluntarily dismissing its complaint, GoCodes has not provided Plaintiffs with a covenant not to sue, nor has it withdrawn its allegations of infringement against Life360,

Tile, and their customers. Plaintiffs therefore face a real and immediate threat of future litigation under the '813 Patent.

15. The Court has personal jurisdiction over GoCodes pursuant to the laws of the State of Delaware, including Delaware's long-arm statute, 10 Del. C. § 3104(c).

16. The Court has personal jurisdiction over GoCodes due to GoCodes purposefully availing itself to the jurisdiction of this Court by its filing of *GoCodes, Inc. v. Life360, Inc. and Tile, Inc.*, Case 1:25-cv-00685-CFC (D. Del.) in this Court.

17. The Court has personal jurisdiction over GoCodes because GoCodes has conducted its patent enforcement activities in this District and towards entities incorporated in Delaware. In particular, as evidenced by *GoCodes, Inc. v. Life360, Inc. and Tile, Inc.,* GoCodes' enforcement efforts have targeted Life360 and Tile, both of which are incorporated in Delaware.

18. Venue is proper pursuant to 28 U.S.C. § 1391 at least because Life360 and Tile are incorporated in the State of Delaware and GoCodes elected to file *GoCodes, Inc. v. Life360, Inc. and Tile, Inc.*, Case 1:25-cv-00685-CFC (D. Del.) in this Court, which was voluntarily dismissed without prejudice. Accordingly, a substantial part of the events or omissions giving rise to the claim occurred in this District.

## BACKGROUND

19. Upon information and belief, GoCodes is the current owner of the '813 Patent. The '813 Patent includes 26 claims, with claims 1, 9, 14, and 19 presented in independent form.

20. In the complaint in *GoCodes, Inc. v. Life360, Inc. and Tile, Inc.,* GoCodes asserted the infringement of claims 19, 20, and 22–26 of the '813 Patent. Of these asserted claims, only claim 19 is independent.

21. Claim 19 of the '813 Patent reads:

> A portable asset recovery system, comprising:
> a host processor including a memory module hosting a database of individual user accounts, each individual user account including at least one return profile associated with an individual portable asset, wherein each return profile includes privacy preferences elected by a user, the return profile and privacy preferences being used to create a unique property page that is uniquely associated with the individual portable asset; and
> a visual tag including a symbol containing embedded information, the embedded information including a machine readable internet link to the unique property page, the symbol being accessible to capture by a camera device while the visual tag is resiliently attached to the individual portable asset, and wherein the camera device directly accesses and displays the unique property page.

22. The claims of the '813 Patent, including at least claim 19, are directed to the abstract idea of managing physical items in a database with identifying tags. The remainder of the claims recite conventional components, including a host processor, memory module, database, and a symbol containing an embedded link, that are used for their ordinary purpose to implement the abstract idea.

23. The Background section of the '813 Patent admits that identifying tags like barcodes and QR barcodes were known in the prior art and were utilized for tracking, and even admits that consumers could already use cameras in their smart phones to read QR barcodes and be directed to websites with product information:

> Traditional barcodes have been utilized for many years for tracking items during transit or for inventory purposes. For instance, airlines utilize barcodes during their check-in process to tag checked baggage to assist with tracking and verifying arrival at the final destination. Another representative example is the use of barcodes to track shipments from retailer to consumer using various shipping companies, wherein the status and location of the shipment is updated to indicate the shipping progress. Finally, many companies utilize unique barcodes for high dollar items such as computers or other electronic devices so as to facilitate inventory and to track these assets.
> More recently, a new style of coding technology referred to as a QR barcode or quick response barcode has begun to be

>       utilized due to the increased amount of information that can be embedded within their code. For instance, individual internet addresses can be embedded within QR barcodes.  Almost any individual with an electronic device having a camera such as, for example, "smart" phones, tablet computers, laptop computers and the like, can utilize readily available QR reader applications/programs to access a wealth of product information or be directed to websites including product information by simply snapping a picture of a QR barcode.

'813 Patent at 1:35-57.

24.     The claims of the '813 Patent, including at least claim 19, fail to recite an inventive concept that is significantly more than the abstract idea of managing physical items in a database with identifying tags using conventional technology like barcodes and smart phones.

25.     The claims of the '813 Patent, including at least claim 19, recite generic ways to organize and manage information that are not significantly different than the fundamental business practice of managing the location of objects with identifying tags, which has been a common practice in libraries, hospitals, archives, shipment tracking, lending/rental practices, and the like.

26.     The claims of the '813 Patent, including at least claim 19, do not improve the functionality of any computing device or other technology recited in the claims, such as the host processor, memory module, and database.

27.     The "visual tag including a symbol containing embedded information, the embedded information including a machine readable internet link to the unique property page" recited by at least claim 19 of the '813 Patent is a generic, well-known, and conventional way to store and convey data. The symbol and the embedded information are recited in terms of their communicative content (i.e., a link to a unique property page).

28. User profiles and preferences are generic, well-known, and conventional ways to manage user information. The "return profile," "privacy preferences," and "unique property page" recited by at least claim 19 of the '813 Patent are nothing more than informational content.

29. Asset-tracking tags have been used for decades to track hospital items in libraries, hospitals, archives, warehouses, and the like, such as luggage, medical equipment, library books, tools, and other objects. Traditionally, such tags include a unique identifier that enables a look-up of the location and/or owner information in a database.

30. Before the earliest priority date of the '813 Patent, tags with web-based codes for identification purposes for allowing someone who located the tagged object to enter the code into a web browser, were well known, routine, and conventional. Numerous solutions existed in the market to manage lost items tagged with web-based codes.

31. Before the earliest priority date of the '813 Patent, BoomerangIt, Inc. provided tags with a website address and a unique ID that could be entered into the website to arrange a return of the tagged item. *See* Exhibit C hereto. Upon information and belief, U.S. Patent No. 7,424,473 is directed to the BoomerangIt system, and it is currently expired. According to U.S. Patent No. 7,424,473, the platform enabled "both the owner and the finder [of an item to] maintain their own privacy and personal security." U.S. Patent No. 7,424,473 at 10:14-17.

32. Before the earliest priority date of the '813 Patent, ReboundTag (reboundtag.com) provided tags with an RFID chip and barcode including a unique ID that could be used to arrange a return of the tagged item. Users could register their items and use a "Members Area" of the site to "edit [their] details and travel itinerary online". Someone finding the tagged item could enter the ID into a website (www.reboundtag.com/tagfound.html) to arrange for the return. *See* Exhibit D hereto.

33. Before the earliest priority date of the '813 Patent, ReturnMoi (returnmoi.com) provided tags with a website address and a unique ID that could be entered into the website to arrange a return of the tagged item. Users could register their items and "edit or update any of the information about that item (serial number, description, etc.)." *See* Exhibit E hereto.

34. Before the earliest priority date of the '813 Patent, StuffBak (stuffbak.com) provided sticker tags with a registration number that can be typed into the StuffBak site to return the tagged item for a reward. Users could sign up for different levels of accounts to manage tags for multiple items through the StuffBak website. *See* Exhibit F hereto.

35. Before the earliest priority date of the '813 Patent, PetHub provided pet tags with QR codes with an embedded URL that could be scanned by someone who found the pet to obtain owner information. The system allowed for users to manage their personal data, allowing for the owner to "update the page to show contact information, vet name, medications, where the pet was last seen, and so on." *See* Exhibit G hereto.

36. In 2009, before the earliest priority date of the '813 Patent, Life360 offered a lost and found recovery service that provided codes that could be entered into a website (found.life360.com) to facilitate the return of the item. *See* Exhibit H hereto.

37. In 2010, before the earliest priority date of the '813 Patent, Life360 acquired Foundog, a lost item recovery service that provided tags with identifiers that could be entered into a website. *See* Exhibit I hereto.

38. On information and belief, it was well known, routine, and conventional before the earliest priority date of the '813 Patent to associate a return profile with a tagged item, such that the return profile includes information entered and/or controlled by the owner of the asset.

On information and belief, it was also well known to maintain user anonymity by using an intermediary contact, such that a user can register with different privacy preferences.

39. On information and belief, it was well known, routine, and conventional before the earliest priority date of the '813 Patent to read a symbol, such as but not limited to a conventional barcode or QR code, including an embedded URL with a camera of a user device.

## COUNT I

**(Declaration of Invalidity of U.S. Patent No. 8,973,813 under 35 U.S.C. § 101)**

40. Plaintiffs repeat and re-allege the averments set forth in paragraphs 1 through 39 of this Complaint by reference as if fully set forth herein.

41. Abstract ideas are ineligible for patent protection under Section 101 of the Patent Act. *See Bilski v. Kappos*, 561 U.S. 593, 653 (2010).

42. Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps, namely (1) determining whether the claims at issue are directed to a patent-ineligible concept, and (2) if the claim contains an abstract idea, whether there is an inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014).

43. The claims of the '813 Patent, including at least those claims asserted against Life360 and Tile, are directed to the abstract idea of managing physical items in a database with identifying tags, and none of the claims contain an inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

44. The claims of the '813 Patent, including at least those claims asserted against Life360 and Tile, are broad and generic, and do not contain meaningful limitations that would

restrict it to a non-routine, inventive application of the abstract idea of managing physical items in a database with identifying tags.

45. The claims of the '813 Patent, including at least those claims asserted against Life360 and Tile, recite generic ways to organize and manage information that are not significantly different than the fundamental business practice of managing the location of objects with identifying tags, which has been a common practice in various industries and businesses for decades or longer with both physical logbooks and electronic databases.

46. The claimed components, including a host processor, memory module, database, and a symbol containing an embedded link, are used for their ordinary purpose to implement the abstract idea. None of these claimed components improve the functionality of any computing device or other technology recited in the claims.

47. The claims of the '813 Patent, including at least those claims asserted against Life360 and Tile, all include similar limitations regarding the abstract idea of managing physical items in a database with identifying tags. They also do not include anything other than generic components and processes such that they fail to contain an inventive concept. The claims do not contain any inventive concept amounting to significantly more than the abstract idea.

48. The Federal Circuit has found similar patent claims to be ineligible. For example, in *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,* 776 F.3d 1343, 1348 (Fed. Cir. 2014), the claims generally recited "a method of 1) extracting data from hard copy documents using an automated digitizing unit such as a scanner, 2) recognizing specific information from the extracted data, and 3) storing that information in a memory." *Content Extraction*, 776 F.3d at 1345. The claimed method "[could] be performed by software on an automated teller machine (ATM) that recognizes information written on a scanned check, such as

the check's amount, and populates certain data fields with that information in a computer's memory." *Id.* The Federal Circuit concluded in *Alice*'s first step that the claims were "drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory"; or, put simply: "data recognition and storage." *Id.* at 1347. In rejecting the plaintiff's argument that the claims were not abstract because they required the use of a scanner, the Federal Circuit likened the claims to those found abstract in *Alice*, which "also required a computer that processed streams of bits." *Id.*

49. By way of further example, in *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017), the Federal Circuit found claims directed to encoding and decoding a bar code invalid under both Alice steps. *Secured Mail*, 873 F.3d at 907. The *Secured Mail* claims "provide[d] a method whereby a barcode is generated, affixed to a mail object, and sent through the mail system [and t]hen, upon receipt, the barcode is scanned, and data corresponding to the sender is sent to the recipient over the network and displayed on the recipient's device." *Id*. at 910–11. The Federal Circuit found that "each step of the process is directed to the abstract process of communicating information about a mail object using a personalized marking." *Id*. at 911. And because the claims were "non-specific and lack[ed] technical detail," utilizing "well known" technologies and generic hardware, the Federal Circuit concluded that the claims lacked an inventive concept. *Id*. at 912.

50. Because the claims of the '813 Patent, including at least those claims asserted against Life360 and Tile, are altogether devoid of any "inventive concept," they are patent-ineligible under 35 U.S.C § 101, and thus invalid.

## COUNT II

**(Declaration of Invalidity of U.S. Patent No. 8,973,813 under 35 U.S.C. §§ 102 and/or 103)**

51. Plaintiffs repeat and re-allege the averments set forth in paragraphs 1 through 50 of this Complaint by reference as if fully set forth herein.

52. As of the earliest possible priority date of the '813 Patent, at least claim 19 was anticipated by the prior art available at that time. Accordingly, at least claim 19 of the '813 Patent fails to satisfy the requirements of 35 U.S.C. § 102 and should not have issued.

53. As of the earliest possible priority date of the '813 Patent, at least claim 19 would have been obvious to a person of ordinary skill in the art in view of the prior art available at that time. Accordingly, at least claim 19 of the '813 Patent fails to satisfy the requirements of 35 U.S.C. § 103 and should not have issued.

54. By way of example, prior to the earliest priority date of the '813 Patent, ReboundTag (reboundtag.com) provided tags with an RFID chip and barcode including a unique ID that could be used to arrange a return of the tagged item. Users could register their items and use a "Members Area" of the site to "edit [their] details and travel itinerary online." Someone finding the tagged item could enter the ID into a website (www.reboundtag.com/tagfound.html) to arrange for the return. *See* Exhibit D hereto.

55. The ReboundTag system included a database of individual registered user accounts including a return profile for the user. The "Members Area" of the return profile of the user accounts includes optional privacy preferences for the user. A unique property page is created using the "Members Area" that is associated with the tags (the individual portable asset).

56. The ReboundTag system tags included an RFID chip and barcode including a unique ID, constituting a symbol having an embedded internet link to the unique property page.

57. The embedded internet link of the ReboundTag system tags was capable of being captured by a camera device to display the unique property page and/or this was an obvious design variation to one of ordinary skill in the art at the time of the invention of the '813 Patent.

58. Upon information and belief, the ReboundTag system was not considered by the Examiner during prosecution of the '813 Patent.

59. By way of example, prior to the earliest priority date of the '813 Patent, PetHub provided pet tags with QR codes with an embedded URL that could be scanned by someone who found the pet to obtain owner information. The system allowed for users to manage their personal data, allowing for the owner to "update the page to show contact information, vet name, medications, where the pet was last seen, and so on." *See* Exhibit G hereto.

60. The PetHub system included a database of individual registered user accounts including a return profile for the user. The users could manage their personal data inputs for their return profile, thus constituting privacy preferences elected by the user to create a unique property page. The unique property page was associated with the pet tags having QR codes with embedded URLs (the individual portable asset).

61. The PetHub tags having QR codes with embedded URLs constitute a symbol having an embedded internet link to the unique property page.

62. The embedded internet link of the PetHub tags was capable of being captured by a camera device to display the unique property page and/or this was an obvious design variation to one of ordinary skill in the art at the time of the alleged invention of the '813 Patent.

63. Upon information and belief, the PetHub system was not considered by the Examiner during prosecution of the '813 Patent.

64. As of a date no later than the earliest priority date of the '813 Patent, a person of ordinary skill in the art would know to associate a return profile with a tagged item, such that the return profile includes information entered and/or controlled by the owner of the asset, and to maintain user anonymity by using an intermediary contact, such that a user can register with different privacy preferences.

65. As of a date no later than the earliest priority date of the '813 Patent, a person of ordinary skill in the art would know to read a symbol, such as but not limited to a conventional barcode or QR code, including an embedded URL with a camera of a user device.

66. All limitations of at least claim 19 of the '813 Patent are taught by, or obvious in view of, the prior art, including at least the ReboundTag and PetHub systems.

67. By way of example, the ReboundTag and PetHub systems teach, suggest, or render obvious "a host processor including a memory module hosting a database of individual user accounts, each individual user account including at least one return profile associated with an individual portable asset."

68. By way of example, the ReboundTag and PetHub systems teach, suggest, or render obvious "return profile include[ing] privacy preferences elected by a user, the return profile and privacy preferences being used to create a unique property page that is uniquely associated with the individual portable asset."

69. By way of example, the ReboundTag and PetHub systems teach, suggest, or render obvious "a visual tag including a symbol containing embedded information, the embedded information including a machine readable internet link to the unique property page."

70. By way of example, the ReboundTag and PetHub systems teach, suggest, or render obvious "the symbol being accessible to capture by a camera device while the visual tag is

resiliently attached to the individual portable asset, and wherein the camera device directly accesses and displays the unique property page."

71. By way of example, each of the BoomerangIt, ReturnMoi, Stuubak, Life360, and Foundog systems mentioned herein, either alone or in combination teach, suggest, or render obvious at least claim 19 of the '813 Patent.

72. The claims of the '813 Patent are invalid under 35 U.S.C §§ 102 and 103.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter the following relief pursuant to 28 U.S.C. §§ 2201 and 2202:

A. That a declaration be issued under 28 U.S.C. § 2201 that the claims of United States Patent No. 8,973,813 are invalid under 35 U.S.C § 101;

B. That a declaration be issued under 28 U.S.C. § 2201 that the claims of United States Patent No. 8,973,813 are invalid under 35 U.S.C § 102;

C. That a declaration be issued under 28 U.S.C. § 2201 that the claims of United States Patent No. 8,973,813 are invalid under 35 U.S.C § 103;

D. Any damages permitted in the Court's equitable discretion;

E. A finding that this case is exceptional under 35 U.S.C. § 285 and an award to Plaintiffs of their attorneys' fees, costs, and expenses in this action; and

F. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs respectfully request a trial by jury of all issues triable by jury.

*Of Counsel:*

Kent E. Baldauf, Jr.
Bryan P. Clark
Christian D. Ehret
The Webb Law Firm
One Gateway Center
420 Ft. Duquesne Blvd., Suite 1200
Pittsburgh, PA 15222
(412) 471-8815
kbaldaufjr@webblaw.com
bclark@webblaw.com
cehret@webblaw.com

Dated: December 18, 2025

/s/Thatcher A. Rahmeier
Thatcher A. Rahmeier (No. 5222)
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
thatcher.rahmeier@faegredrinker.com

*Attorneys for Plaintiffs Life360, Inc. and Tile, Inc.*